## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 2:10-bk-20883 |
| TERRY LEE WILSON (deceased), and NEDRA ELIZABETH WILSON, | CHAPTER 13 |
| Debtors. | JUDGE FRANK W. VOLK |

## MEMORANDUM OPINION AND ORDER

Pending is Debtors Terry Lee Wilson and Nedra Elizabeth Wilson's motion for hardship discharge, filed November 23, 2015. Inasmuch as Mr. Wilson is now deceased, the Court hereafter refers to the movant as Ms. Wilson alone.[1]

---

[1] The Code does not deal specifically with the procedure to be followed when a debtor passes during the life of a case. Federal Rule of Bankruptcy Procedure 1016 is designed to cover the matter. The Rule provides materially as follows:

> If a [deceased] . . . individual's . . . case is pending under . . . chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

Fed. R. Bankr. P. 1016. Respecting the application of Rule 1016, one commentator has observed as follows:

> In a Chapter . . . 13 case, the death of the individual will no doubt result in a dismissal simply because the funding of any plan under this Chapter is based on submission of the future earnings of the debtor. . . . [I]f the individual debtor dies . . . after the commencement of the case, either before confirmation or after, the feasibility of administration will depend on several factors including the continuing need for reorganization and the ability to effectuate a plan and to consummate a confirmed plan.

11 Hon. William L. Norton Jr. & William L. Norton III, Norton Bankr. L. & Prac. 3d R. 1016 comment (2016). Mr. Wilson passed prior to confirmation of the amended plan. It does not appear possible to complete the plan following his death. Absent a showing of cause, the Court will, no later than March 1, 2016, dismiss the case as to Mr. Wilson.

On January 27, 2016, the Chapter 13 Trustee, Helen M. Morris, objected to the motion. On February 3, 2016, the Court took the motion under advisement following a hearing.

## I.

On September 3, 2010, Ms. Wilson filed a Chapter 13 petition. On March 14, 2011, the Court confirmed the proposed plan. The plan required a pay-in of $13,500, including an estimated pro rata distribution to unsecured creditors of one percent. On December 3, 2013, the case was voluntarily converted to a Chapter 7 proceeding. On February 27, 2014, the Court denied a Chapter 7 discharge, finding ineligibility pursuant to 11 U.S.C. 727(a)(8). The case was then converted anew to a Chapter 13 proceeding. On January 29, 2015, the Court confirmed Ms. Wilson's amended Chapter 13 plan, Mr. Wilson having passed by that date. The amended plan required a pay-in of $18,837.50, including an estimated pro rata distribution to unsecured creditors of five percent.

On September 22, 2015, the Trustee moved to dismiss for failure to make plan payments. Three days later, Ms. Wilson converted again to a Chapter 7 proceeding. On October 28, 2015, the Court convened a hearing, at which Ms. Wilson professed she was ineligible for discharge under Chapter 7 and sought leave to move for hardship discharge under Chapter 13. On December 3, 2015, the case was converted again to a Chapter 13 proceeding. Ms. Wilson then moved for the instant hardship discharge on November 23, 2015.

## II.

**A.     Governing Standard**

To be eligible for a hardship discharge, a debtor must satisfy the requirements of

11 U.S.C. § 1328(b):

> [A]t any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—
>
> (1)     the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
>
> (2)     the value, as of the effective date of the plan, of the property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
>
> (3)     modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b). A debtor must satisfy all three conditions before the Court is authorized to

grant a hardship discharge. *In re Bandilli*, 231 B.R. 836, 839 (1st Cir. B.A.P. 1999); *In re White*,

126 B.R. 542, 545 (Bankr. N.D. Ill. 1991); 7 Hon. William L. Norton Jr. & William L. Norton III,

*Norton Bankr. L. & Prac. 3d* § 153:4 (2016) ("The hardship discharge is available to a Chapter 13

debtor at any time after confirmation, but only if the three conditions described above are

demonstrated by the debtor after notice and a hearing.") (footnotes omitted).

**B.**     **Section 1328(b)(1)**

The first condition under section 1328(b) is that, for reasons beyond the debtor's control, she could not complete plan payments. 11 U.S.C. § 1328(b)(1). This analysis "is necessarily fact-driven, with an emphasis properly focused on the nature and quality of the intervening event or events upon which the debtor relies." *Bandilli*, 231 B.R. at 840; *see In re Bacon*, No. 02-40665, at *2 (Bankr. S.D. Ga. Aug. 20, 2003). Courts are split, however, on the level of severity of factual circumstances that will properly give rise to a hardship discharge. *See generally* Honorable W. Homer Drake, Jr., *et al.*, *Chapter 13 Practice & Procedure* § 21:8 (2nd ed. 2015); *In re Harrison*, No. 96-36511-T, 1999 WL 33114273, at *1-2 (Bankr. E.D. Va. Aug. 3, 1999). *Compare White*, 126 B.R. at 545 (limiting the application to "catastrophic circumstances" like the death of the debtor), *with Bandilli*, 231 B.R. at 839-40 (refusing "to read the word catastrophic into the statute": "Congress asked only that the Court determine whether the debtor is 'justly . . . accountable' for the plan's failure. The word 'accountable' is comparatively mild to the emotionally-laden term 'catastrophic.'").

Where courts have understood section 1328(b)(1) to require less than catastrophic circumstances to justify a debtor's failure to complete payments under a Chapter 13 plan, determining the foreseeability and substantiality of the changed circumstances is generally paramount. *See Bandilli*, 231 B.R. at 840; *In re Roberts*, 279 B.R. 396 (1st Cir. B.A.P. 2000), *aff'd*, 279 F.3d 91 (1st Cir. 2002); *Bacon*, No. 02-40665, at *2. In *Bacon*, for example, the court held that section 1328(b)(1) was satisfied where

(1)     debtor [wa]s unable to complete payments under a Chapter 13 plan due to a change in circumstances for which debtor [wa]s not accountable,

(2)     . . . the change was substantial in nature,

4

(3)      [the change] was not foreseeable at the time of the confirmation of the plan, and

(4)      debtor has made every effort to overcome such circumstances but is still unable to complete his plan payments.

*Bacon*, No. 02-40665, at *2. As to the substantiality of a change in circumstance, even termination of employment, standing alone, is insufficiently substantial to justify a hardship discharge. *See In re Easley*, 240 B.R. 563, 565 (Bankr. W.D. Mo. Sept. 10, 1999) (stating that, even in Courts that do not require a finding of catastrophic circumstances, "the loss of employment alone is not enough").

Where courts have understood section 1328(b) to require catastrophic circumstances, purely economic reasons are generally outside the parameters usually amounting to "the type of catastrophic events such as death or disability which prevent a debtor, through no fault of his or her own, from completing payments pursuant to a plan of reorganization." *See In re Nelson*, 135 B.R. 304, 307 (Bankr. N.D. Ill. 1991) (noting that the debtor's loss of his truck, inability to find full time employment, and an unexpected expense of $1,118 are economic reasons and not, therefore, the types of reasons which would justify a hardship discharge); *see also In re Meek*, No. 10-02155-8-JRL, 2012 WL 1194109, at *7 (Bankr. E.D. Va. Feb. 24, 1997) ("[T]he granting of a hardship discharge is reserved for the most extreme and unusual of circumstances that prevent a debtor from completing payments under the plan, and not for purely economic reasons.").

Indeed, a debtor's death or permanent disability preventing the debtor from earning an income are the generally cited means by which section 1328(b) is satisfied by those courts that require catastrophic circumstances to justify a hardship discharge. *See e.g.*, *In re Bond*, 36 B.R. 49, 51-52 (Bankr. E.D. N.C. 1984) (death of the debtor considered grounds for hardship discharge); *cf. In re Cummins*, 266 B.R. 852, 857-58 (Bankr. N.D. Iowa 2001) (finding no grounds

5

for hardship discharge where husband-debtor's injury kept him from work only for a time and wife-debtor's delivery of two children kept her from work); *In re Bandilli*, 218 B.R. 273, 275 (Bankr. D. R.I. 1998) (because the debtor's medical condition preexisted the case, she did not show sufficient circumstances for a hardship discharge), *aff'd*, *Bandilli*, 231 B.R. at 841.


**C.     Analysis**

The Court need not choose between the two forks of authority that have developed around section 1328(b)(1). The evidence tendered by Ms. Wilson fails under either approach. Mr. Wilson died in 2014. His income was thus lost at that time and would have been unavailable to fund a plan. The amended plan was confirmed, however, on January 29, 2015, after Mr. Wilson's death. His death was therefore foreseeable at the time of the amended plan's confirmation, did not constitute a change in circumstances, and cannot justify the failure to pay according to the terms of the amended plan.

Ms. Wilson also relies upon the loss of her job in October 2015. That misfortune was quite recent, however, and she has not offered evidence respecting the efforts she has made to secure suitable alternative employment. Further, Mrs. Wilson's loss of employment occurred in October while her payments into the Chapter 13 Plan ceased in May, five months before Mrs. Wilson lost her job. The loss of her job thus cannot be said to have doomed her ability to pay-in.

Having considered the entirety of the record, Ms. Wilson has presented insufficient evidence to support a finding that her stoppage of payments was "due to circumstances for which

the debtor should not justly be held accountable." 11 U.S.C. § 1328(b)(1). She has thus defaulted

at step one of the section 1328(b) showing required for relief.[2]

### III.

   Based upon the foregoing discussion, it is, accordingly, **ORDERED** that Ms.

Wilson's Motion for Hardship Discharge is **DENIED**.

   The Clerk shall transmit a copy of this written opinion and order to the parties and

their counsel, if any, and the United States Trustee.

DATED: February 22, 2016

_Frank W. Volk_

Frank W. Volk
United States Bankruptcy Judge

---

[2] The Court need not examine the remaining statutory prerequisites. In the event that analysis was necessary, Ms. Wilson would fare no better. Pursuant to section 1328(b)(2), she has paid nothing to her unsecured creditors. Respecting section 1328(b)(3), Ms. Wilson's motion is silent as to the practicability of a plan modification, despite the fact that she expects to perhaps soon begin receiving approximately $1,500 per month in Social Security survivors' benefits.